1
**TIMOTHY A. SCOTT**
California Bar No. 215074
2
LAW OFFICES OF TIMOTHY A. SCOTT
1350 Columbia Street, Suite 600
3
San Diego CA, 92101
Telephone: (619) 794-0451
4
Facsimile: (619) 652-9964
email: timscottlaw@cox.net
5

6
Attorneys for Julio Beltran-Lay

UNITED STATES DISTRICT COURT
7
SOUTHERN DISTRICT OF CALIFORNIA
8
**(HONORABLE ROGER T. BENITEZ)**
9

10
UNITED STATES OF AMERICA,      )      Case No. 07cr3470-BEN
                               )
11
           Plaintiff,          )      Date:   February 25, 2008
                               )      Time:   2:00 p.m.
12
           v.                  )
                               )      **MEMORANDUM IN SUPPORT OF**
Julio Beltran-Lay              )      **MOTIONS**
13
                               )
           Defendant.          )
14

15
**I.**

16
**Introduction and
Statement of Facts**

17

18
**A.      Introduction.**

19
        The government charges Mr. Beltran-Lay with being deported alien found in the United

20
States.  Mr. Beltran-Lay denies the charges.  He respectfully files these motions to obtain

21
discovery to which he is entitled, to suppress fruit of an unlawful arrest and interrogation in the

22
Otay area of San Diego County, and to dismiss the indictment for a variety of infirmities in the

23
charging document.

24
**B.      Mr. Beltran-Lay's arrest and interrogation.**

25
        On October 22, 2007, United States Border Patrol received a call "of an individual

26
detained" near Donovan Correctional Facility.[1]  When the Border Patrol agent arrived, a prison

27
──────────────

28
        [1]      *See* Report of Investigation (Excerpt), attached as Exhibit A.

1   correctional officer still "had the individual detained".[2]  Though admitting repeatedly that Mr.

2   Beltran was "detained," and without claiming to Mirandize him, the agent "approached the

3   individual and identified myself as a United States Border Patrol Agent and *questioned him as to*

4   *his citizenship and nationality*."[3]  Mr. Beltran-Lay stated that he was an American citizen,

5   according to the agent.  The agent claimed that Mr. Beltran-Lay could not answer "United States

6   citizen questions" – whatever those are – and arrested him.  He took Mr. Beltran-Lay to the

7   Border Patrol station for further investigation.

8        Mr. Beltran-Lay was later indicted for illegal entry after deportation.  He pleaded not

9   guilty.

10  **C.    Mr. Beltran-Lay's routine discovery requests under Rule 16.**

11       On January 15, 2008, Mr. Beltran-Lay sent the government a written discovery request.

12  The letter requested three items: 1) any deportation tapes or other records from an alleged

13  deportation hearing; 2) an opportunity to review Mr. Beltran-Lay's own A-file; and 3) any other

14  recorded or written statements that the government attributed to Mr. Beltran-Lay.[4]  Mr. Beltran-

15  Lay received no response.

16       On February 5, 2008, Mr. Beltran-Lay followed up on his discovery requests.  The

17  government's only response was in pertinent part, "[a]s you are aware, the United States has

18  produced 41 pages and one DVD of discovery.  If you would like additional discovery, you

19  should file a discovery motion."[5]

20       Though the government's discovery obligations are triggered "upon a defendant's

21  *request*"[6] – not upon a formal motion – and though these items seem to be standard discovery

22  items, Mr. Beltran-Lay must now oblige the government and burden the Court with these

23  _____

24       [2]    *Id.*

25       [3]    *Id.*

26       [4]    *See* Discovery Letter, attached as Exhibit B.

27       [5]    *See* Government Response, attached as Exhibit C.

28       [6]    *See* Fed. R. Crim. P. 16(a) *et seq.*

1  requests.  These motions follow.

2                                    **III.**

3                                 **Discussion**

4

5  **A.    This Court should order disclosure of the deportation tape, the A-file, and any statements by the defendant – routine discovery items that are due "upon a defendant's request."**

6

7        Under Fed. R. Crim. P. 16, "the government *must* disclose to the defense, and make

8  available for inspection, copying, or photographing" all of the following:

9  •     "any relevant written or recorded statement by the defendant"[7] (if in the government's

10        control and known to it); and

11  •     "books, papers, objects. . . or copies" (if in the government's control and material to the

12        preparation of the defense, to be used by the government at trial, or obtained from or

13        belonging to the defendant).[8]

14        Importantly, the government's obligation for each category of discovery is triggered

15  "upon a defendant's request."[9] Nothing in Rule 16 requires a formal discovery motion before

16  the government is obligated to comply.

17        Each of Mr. Beltran-Lay's discovery requests fall within at least one of these categories,

18  and he has made a written request for the material.  Nevertheless, the government refuses to

19  comply with its discovery obligations despite a written request.  It requires a discovery motion

20  before it will meet its basic obligations under the law.  Regrettably, Mr. Beltran-Lay must ask

21  this Court to intervene, and to order the government to disclose deport tapes, to allow an A-file

22  viewing, and to order disclosure of any other written or recorded statement by the defendant.

23

24  **B.    This Court should suppress fruit of an unlawful arrest.**

25  _____

26  [7]      Fed. R. Crim. P. 16(a)(1)(B) .

27  [8]      Fed. R. Crim. P. 16(a)(1)(E).

28  [9]      Fed. R. Crim. P. 16 *et seq* .

1   In order to satisfy the Fourth Amendment's strictures, an investigatory stop may be made

2   only if the officer in question has "a reasonable suspicion supported by articulable facts that

3   criminal activity may be afoot...."[10]  Thus, the Supreme Court has held that reasonable suspicion

4   does not exist where an officer can articulate only "an 'inchoate and unparticularized suspicion

5   or 'hunch' of criminal activity.' "[11]   Rather, reasonable suspicion exists only when an officer is

6   aware of specific, articulable facts which, when considered with objective and reasonable

7   inferences, form a basis for *particularized* suspicion.[12]  In turn, particularized suspicion means a

8   reasonable suspicion that *the particular person being stopped* has committed, or is about to

9   commit, a crime.[13]  Of course, when a *Terry* stop converts to an actual arrest, reasonable

10  suspicion no longer suffices; agents then must have probable cause to arrest.

11  Here, it is debatable whether reasonable suspicion existed to detain Mr. Beltran-Lay in the

12  first place.  Either way, however, there was no probable cause for Border Patrol to take him into

13  custody.  The government offers only conclusory and meaningless allegations that Mr. Beltran

14  could not answer "U.S. citizen questions" – whatever that is supposed to mean.  This Court

15  should suppress all fruits of this arrest absent a more particularized showing of probable cause.

16
17  **C.    This Court should suppress Mr. Beltran-Lay's unmirandized, custodial statements.**

18  Individuals possess the right to be informed, prior to custodial interrogation, "that [they]

19  have] the right to the presence of an attorney, and that if [they] cannot afford an attorney one will

20  be appointed for [them] prior to any questioning if [they] so desire [ ]."[14]  "What Miranda

21  requires 'is meaningful advice to the unlettered and unlearned in language which [they] can

22

23  [10]    *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (internal quotation omitted) (citing
24          *Terry v. Ohio,* 392 U.S. 1, 30 (1968)).

25  [11]    *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000).

26  [12]    *United States v. Cortez,* 449 U.S. 411, 418 (1981); *United States v. Salinas,* 940 F.2d
        392, 394 (9th Cir.1991).

27  [13]    *Cortez,* 449 U.S. at 418.

28  [14]    *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

comprehend and on which [they] can knowingly act.'"[15]  "The  warning must be clear and not

susceptible to equivocation."[16]  Of course, the government must also demonstrate that any

statements given were voluntary in nature, and that they complied with 18 U.S.C. § 3501 as well.

Here, agents admit that Mr. Beltran-Lay was detained and not free to go.[17]  They also

admit that they asked him questions specifically to elicit information about his citizenship and

immigration status.  These questions are nothing if not custodial, designed to elicit an

incriminating response.  Suppression must result.

**D.    This Court should suppress any statements from deportation hearings not turned over to the defense, and should hold a voluntariness hearing in any event.**

Mr. Beltran-Lay has requested any deportation tapes or other records from any alleged

deport proceedings.  The government has not complied.  The Court should exclude any alleged

statements from a deportation hearing under Fed. R. Evid. 16 for non-disclosure.  In any event,

the Court should conduct a 18 U.S.C. § 3501 hearing to determine whether any statements were

voluntary under the circumstances.

**E.    Motion to dismiss the indictment because it fails to allege all elements of the charged offense.**

The indictment must be dismissed because the government has failed to properly allege

all elements of the offense.  The Fifth Amendment requires that "[n]o person shall be held to

answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a

Grand Jury . . .."  Consistent with this Constitutional requirement, the Supreme Court has held

that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set

---

[15]     *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002) (*quoting United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989).

[16]     *San Juan-Cruz*, 314 F.3d at 387.

[17]     *See* Exhibit A.

1  forth all the elements necessary to constitute the offense intended to be punished."[18]  It is black

2  letter law that an indictment that does not allege an element of an offense, even an implied

3  element, is defective, and should be dismissed.[19]

4        In this case, the indictment charges a violation of Title 8, United States Code, Sections

5  1326(a) and (b).  In *United States v. Salazar-Lopez*,[20] the Ninth Circuit indicated that to be

6  sufficient, an indictment charging a violation of section 1326(b) must allege either that the

7  defendant has been previously removed subsequent to a conviction (*i.e.,* for a misdemeanor, a

8  felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior

9  removal.  In this case, the indictment only alleges that Mr. Beltran-Lay "was removed from the

10  United States subsequent to April 14, 2006."  Here, the indictment does not allege either that this

11  removal occurred subsequent to a conviction or allege a specific date of the prior removal.

12  Therefore, because the indictment does not allege all elements of section 1326(b), the indictment

13  must be dismissed.

14

15  **F.    Motion to dismiss the indictment because it violates Mr. Beltran-Lay's right to presentment.**

16

17        Mr. Beltran-Lay has a Fifth Amendment right to have a grand jury pass upon those facts

18  necessary to convict him at trial.  In the indictment, the government included the language: "It is

19  further alleged that defendant Julio Beltran-Lay was removed from the United States subsequent

20  to April 14, 2006."  The indictment in this case violates Mr. Beltran-Lay's right to presentment in

21  two ways.  First, the language added by the government does not ensure that the grand jury

22  actually found probable cause that Mr. Beltran-Lay was deported after that date, as opposed to

23  simply being physically removed from the United States.  Second, that the grand jury found

24

---

25    [18]    *United States v. Carll*, 105 U.S. 611, 612-13 (1881) (emphasis added).

26    [19]    *See, e.g., Russell v. United States,* 369 U.S. 749, 769-72 (1962); *Stirone v. United
27    States,* 361 U.S. 212, 218-19 (1960); *United States v. Du Bo,* 186 F.3d 1177, 1179 (9th
      Cir. 1999); *United States v. Keith,* 605 F.2d 462, 464 (9th Cir. 1979).

28    [20]    __ F.3d __, 2007 WL 3085906 at *2 (9th Cir. Oct. 24, 2007).

probable cause to believe that Mr. Beltran-Lay was removed "subsequent to April 14, 2006" does not address the possibility that the government may at trial rely on a deportation that was never presented to, or considered by, the grand jury.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . .." Thus, a defendant has a constitutional right to have the charges against him presented to a grand jury and to be informed of the grand jury's findings via indictment.[21]

To be sufficient, an indictment must allege every element of the charged offense.[22] Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language.[23] "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress."[24] An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment."[25]

In the indictment, the government here has added the language:  "It is further alleged that defendant Julio Beltran-Lay was removed from the United States subsequent to April 14, 2006." There is no indication from this "allegation" that the grand jury was charged with the legal meaning of the word "removal" applicable in this context, as opposed to being simply removed from the United States in a colloquial sense.  It is clear from *Covian-Sandoval* that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must

---

[21] *See Russell v. United States*, 369 U.S. 749, 763 (1962) (An indictment must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet.").

[22] *See United States v. Morrison*, 536 F.2d 286, 287 (9th Cir. 1976) (citing *United States v. Debrow*, 346 U.S. 374 (1953)).

[23] *See Du Bo*, 186 F.3d at 1179.

[24] *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002).

[25] *Du Bo,* 186 F.3d at 1179.

1    prove that a person was removed — as that term is used in the immigration context — after

2    having suffered a conviction.[26] A deportation has the following elements: "(1) that a deportation

3    proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was

4    issued and [(3)] executed by the removal of the defendant from the United States."[27]   As this is

5    the type of removal the government must prove before a petite jury, it is necessary that the

6    government allege such a removal before the grand jury.  As returned, however, there is no

7    assurance from the face of the indictment that the grand jury in this case was charged with the

8    type of removal necessary to increase a person's statutory maximum under section 1326(b).

9         As such, there is no fair assurance that the grand jury will have passed upon those facts

10   necessary to convict Mr. Beltran-Lay.  Additionally, as charged, there is no fair assurance that

11   the indictment will contain those allegations the government will attempt to prove at trial.  If the

12   government alleged before the grand jury that Mr. Beltran-Lay was removed (in a colloquial

13   sense), but offers proof at trial that Mr. Beltran-Lay was removed (in an immigration sense),

14   there will be a constructive amendment of the indictment at trial.[28]

15        A second problem with the indictment is that there is no indication which (if any)

16   deportation the government presented to the grand jury.  In most cases, the government will have

17   a choice of deportations to present to the grand jury to support an allegation that a person had

18   been deported after a specific date.  According to information provided by the government,

19   although not conceded by the defendant, Mr. Beltran-Lay has been deported on several

20   occasions.  This renders it a very real possibility that the government alleged one deportation to

21   the grand jury to sustain its allegation that Mr. Beltran-Lay was removed from the United States,

22   but will attempt to prove at trial a wholly different deportation to sustain its trial proof.  If this

23

24        [26]        462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have
               fewer procedural protections that criminal proceedings).

25

26        [27]        See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without
               contesting, the elements of a deportation provided by the district court.)

27        [28]        See Stirone v. United States, 361 U.S. 212, 217-19 (1960).  Either scenario represents
               a violation of Mr. Beltran-Lay's right to presentment. Stirone, 361 U.S. at 218-19.

28

1   were to turn out to be the case, Mr. Beltran-Lay's right to have the grand jury pass on all facts

2   necessary to convict him would be violated.[29]

3

4   **G.     Motion to dismiss the indictment due to misinstruction of the grand jury.**

5

6           The indictment in the instant case was returned by the January 2007 grand jury.  That

7   grand jury was instructed on January 11, 2007.  The instructions to the impaneled grand jury

8   deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand

9   jury instruction previously given in this district in several ways.[30]  First, instructing grand jurors

10  that their singular duty is to determine whether or not probable cause exists and that they have no

11  right to decline to indict when the probable cause standard is satisfied.  Second, instructing grand

12  jurors of a non-existent prosecutorial duty to present exculpatory evidence.  These instructions

13  are compounded by the erroneous instructions and comments to prospective grand jurors during

14  *voir dire* of the grand jury panel, which immediately preceded the instructions.  Therefore, the

15  indictment should be dismissed.

16  **H.     Motion to strike surplusage from the indictment.**

17          The above argument to dismiss the indictment based on the government's failure to

18  comply with Mr. Beltran-Lay's Fifth and Sixth Amendment rights is premised on *Covian-*

19  *Sandoval* having read into section 1326 an additional element—a deportation that occurred at a

20  particular time—that the government must plead to the grand jury and prove to a jury.  To the

21  extent the government argues that *Covian-Sandoval* did not create an additional element, the

22  indictment contains surplusage.  In other words, if the government argues that the <u>timing</u> of a

23  person's deportation is not a element of section 1326, but rather a sentencing factor under

24

25          [29]    *See Du Bo*, 186 F.3d 1179.

26          [30]    *See, e.g., United States v. Cortez-Rivera*, 454 F.3d 1038 (9th Cir. 2006); *United States*
            *v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir.) (*en banc*), cert. denied, 126 S. Ct. 736

27          (2005) *(Navarro-Vargas II)*; *United States v. Navarro-Vargas*, 367 F.3d 896 (9th Cir.
            2004)(*Navarro-Vargas I*); *United States v. Marcucci*, 299 F.3d 1156 (9th Cir. 2002)

28          (per curiam).

1  subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's

2  deportation—the Supreme Court has clearly held to be decided by a judge.

3      The Ninth Circuit has "repeatedly held that language [in an indictment] that describes

4  elements beyond what is required under statute is surplusage and need not be proved at trial."[31]

5  Surplusage in an indictment is subject to being struck at the request of the defendant.[32]   In this

6  case, if the government argues that the date of a person's deportation is not a required element of

7  section 1326, the indictment contains language beyond that which is necessary to convict Mr.

8  Beltran-Lay of violating section 1326.  If the date of a person's deportation is not an element of

9  section 1326, then the language in the indictment is surplusage.  So too is the government's

10  allegation in the indictment that Mr. Beltran-Lay violated section 1326, subsection (b).

11  **I.    Motion for further discovery.**

12      Mr. Beltran-Lay moves for the production by the government of the following discovery

13  and for the preservation of evidence.  This request is not limited to those items about which the

14  prosecutor knows, but includes all discovery listed below that is in the custody, control, care, or

15  knowledge of any government agency.  *See generally Kyles v. Whitley,* 514 U.S. 419 (1995);

16  *United States v. Bryan,* 868 F.2d 1032 (9th Cir. 1989).

17      1.      The Defendant's Statements.  The government must disclose to Mr. Beltran-

18  Lay *all* copies of any written or recorded statements made by Mr. Beltran-Lay; the substance of

19  any statements made by Mr. Beltran-Lay that the government intends to offer in evidence at trial;

20  any response by Mr. Beltran-Lay to interrogation; the substance of any oral statements that the

21  government intends to introduce at trial and any written summaries of Mr. Beltran-Lay's oral

22  statements contained in the handwritten notes of the government agent; any response to any

23  *Miranda* warnings that may have been given to Mr. Beltran-Lay; and any other statements by

24  Mr. Beltran-Lay.  Fed. R. Crim. P. 16(a)(1)(A) and (B).  The Advisory Committee Notes and the

25  1991 amendments to Rule 16 make clear that the government must reveal *all* of Mr. Beltran-

26

27      [31]    *Bargas v. Burns*, 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999).

28      [32]    *United States v. Fernandez*, 388 F.3d 1199, 1220-21 (9th Cir. 2004).

1  Lay's statements, whether oral or written, regardless of whether the government intends to make

2  any use of those statements.

3      2.    Arrest Reports, Notes and Dispatch Tapes.  Mr. Beltran-Lay also specifically

4  requests that all arrest reports, notes and dispatch or any other tapes that relate to the

5  circumstances surrounding his arrest or any questioning, if such reports have not already been

6  produced *in their entirety*, be turned over to him.  This request includes, but is not limited to, any

7  rough notes, records, reports, transcripts or other documents in which statements of Mr. Beltran-

8  Lay or any other discoverable material is contained. Mr. Beltran-Lay includes in this request any

9  redacted portions of the Report of Investigation ("ROI") and any subsequent ROI's that the case

10  agent or any other agent has written.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A)

11  and (B) and *Brady v. Maryland,* 373 U.S. 83 (1963).  *See also Loux v. United States,* 389 F.2d

12  911 (9th Cir. 1968).  Arrest reports, investigator's notes, memos from arresting officers, dispatch

13  tapes, sworn statements, and prosecution reports pertaining to Mr. Beltran-Lay are available

14  under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(I).  Preservation of

15  rough notes is requested, whether or not the government deems them discoverable.

16      3.    *Brady* Material.  Mr. Beltran-Lay requests all documents, statements, agents'

17  reports, and tangible evidence favorable to him on the issue of guilt and/or evidence that affects

18  the credibility of the government's case.  Impeachment and exculpatory evidence both fall within

19  *Brady's* definition of evidence favorable to the accused.  *United States v. Bagley,* 473 U.S. 667

20  (1985); *United States v. Agurs,* 427 U.S. 97 (1976).

21      4.    Any Information That May Result in a Lower Sentence.  As discussed above,

22  any information that may result in a more favorable sentence must also be disclosed pursuant to

23  *Brady,* 373 U.S. 83.  The government must disclose any cooperation or attempted cooperation by

24  Mr. Beltran-Lay, as well as any information that could affect any base offense level or specific

25  offense characteristic under Chapter Two of the Guidelines.  Also included in this request is any

26  information relevant to a Chapter Three adjustment, a determination of Mr. Beltran-Lay's

27  criminal history, or any other application of the Guidelines.

28      5.    The Defendant's Prior Record.  Evidence of a prior record is discoverable

1  under Fed. R. Crim. P. 16(a)(1)(D).  Mr. Beltran-Lay specifically requests a complete copy of

2  any criminal record.

3          6.          Any Proposed 404(b) Evidence.  Evidence of prior similar acts is discoverable

4  under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R.

5  Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice

6  in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to

7  introduce under Fed. R. Evid. 404(b) at trial.  Sufficient notice requires the government to

8  "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred

9  from the other acts evidence." *United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir. 1982)

10  (emphasis added; internal citations omitted); *see also United States v. Brooke,* 4 F.3d 1480, 1483

11  (9th Cir. 1993) (reaffirming *Mehrmanesh* and reversing convictions).

12          7.          Evidence Seized. Evidence seized as a result of any search, either warrantless

13  or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

14          8.          Request for Preservation of Evidence.  The defense specifically requests that

15  all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out

16  of the possession, custody, or care of the government and that relate to the arrest or the events

17  leading to the arrest in this case be preserved.  This request includes, but is not limited to, any

18  samples of narcotics used to run any scientific tests, all narcotics, the results of any fingerprint

19  analysis, Mr. Beltran-Lay's personal effects, and any evidence seized from Mr. Beltran-Lay or

20  any third party.

21          Mr. Beltran-Lay requests that the prosecutor be ordered to *question* all the agencies and

22  individuals involved in the prosecution and investigation of this case to determine if such

23  evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

24          9.          *Henthorn* Material.  Mr. Beltran-Lay requests that the Assistant United States

25  Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all

26  personnel files of each agent (including local and state authorities) involved in the present case

27  for impeachment material. *See Kyles v. Whitley,* 514 U.S. 437, 438 (1995) (holding that "the

28  individual prosecutor has a duty to learn of any favorable evidence known to the others acting on

1   the government's behalf in the case, including the police"); *United States v. Henthorn,* 931 F.2d

2   29 (9th Cir. 1991). This request includes, but is not limited to, any complaints filed (by a

3   member of the public, by another agent, or any other person) against the agent, whether or not

4   the investigating authority has taken any action, as well as any matter for which a disciplinary

5   review was undertaken, whether or not any disciplinary action was ultimately recommended.

6   Mr. Beltran-Lay further requests production of any such information at least *one week* prior to

7   the motion hearing and two weeks prior to trial. If the prosecutor is uncertain whether certain

8   information should be disclosed pursuant to this request, this information should be produced to

9   the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10          10.     Tangible Objects. Mr. Beltran-Lay requests the opportunity to inspect, copy,

11   and test, as necessary, all other documents and tangible objects, including photographs, books,

12   papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions

13   thereof, that are material to the defense or intended for use in the government's case-in-chief or

14   were obtained from or belong to Mr. Beltran-Lay . Fed. R. Crim. P. 16(a)(1)(E). Specifically,

15   Mr. Beltran-Lay requests **color copies** of all photographs in the government's possession of the

16   alleged narcotics.

17          11.     Expert Witnesses. Mr. Beltran-Lay requests the name, qualifications, and a

18   written summary of the testimony of any person that the government intends to call as an expert

19   witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a

20   description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s).

21   *See United States v. Duvall,* 272 F.3d 825 (7th Cir. 2001) (finding that government's written

22   expert notice did not adequately summarize or describe police detective's testimony in drug

23   prosecution where notice provided only a list of the general subject matters to be covered and

24   failed to identify what opinion the expert would offer on those subjects).

25          Mr. Beltran-Lay requests the notice of expert testimony be provided at a minimum of *six*

26   *prior to trial* so that the defense can properly prepare to address and respond to this testimony,

27   including obtaining its own expert and/or investigating the opinions, credentials of the

28   government's expert and obtain a hearing in advance of trial to determine the admissibility of

-13-

1   qualifications of any expert.  *See Kumho v. Carmichael Tire Co.,* 526 U.S. 137, 119 S.Ct. 1167,

2   1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert

3   testimony and such determinations may require "special briefing or other proceedings").

4        12.    Impeachment evidence.  Mr. Beltran-Lay requests any evidence that any

5   prospective government witness has engaged in any criminal act whether or not resulting in a

6   conviction and whether any witness has made a statement favorable to Mr. Beltran-Lay.  *See*

7   Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable under *Brady,* 373 U.S. 83.  *See*

8   *United States v. Strifler,* 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); *Thomas v. United*

9   *States,* 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

10       13.    Evidence of Criminal Investigation of Any Government Witness.  Mr. Beltran-

11  Lay requests any evidence that any prospective witness is under investigation by federal, state or

12  local authorities for any criminal conduct.  *United States v. Chitty,* 760 F.2d 425 (2d Cir. 1985).

13       14.    Evidence of Bias or Motive to Lie.  Mr. Beltran-Lay requests any evidence that

14  any prospective government witness is biased or prejudiced against Mr. Beltran-Lay, or has a

15  motive to falsify or distort his or her testimony.  *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987);

16  *Strifler,* 851 F.2d 1197.

17       15.    Evidence Affecting Perception, Recollection, Ability to Communicate, or

18  Veracity.  Mr. Beltran-Lay requests any evidence, including any medical or psychiatric report or

19  evaluation, tending to show that any prospective witness's ability to perceive, remember,

20  communicate, or tell the truth is impaired; and any evidence that a witness has ever used

21  narcotics or other controlled substance, or has ever been an alcoholic.  *Strifler,* 851 F.2d 1197;

22  *Chavis v. North Carolina,* 637 F.2d 213, 224 (4th Cir. 1980).

23       16.    Witness Addresses.  Mr. Beltran-Lay requests the name and last known address

24  of each prospective government witness.  *See United States v. Napue,* 834 F.2d 1311 (7th Cir.

25  1987); *United States v. Tucker,* 716 F.2d 576 (9th Cir. 1983) (failure to interview government

26  witnesses by counsel is ineffective); *United States v. Cook,* 608 F.2d 1175, 1181 (9th Cir. 1979)

27  (defense has equal right to talk to witnesses). Mr. Ortiz also requests the name and last known

28  address of every witness to the crime or crimes charged (or any of the overt acts committed in

furtherance thereof) who will *not* be called as a government witness.  *United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984).

17.    Names of Witnesses Favorable to the Defendant.  Mr. Beltran-Lay requests the name of any witness who made any arguably favorable statement concerning Mr. Beltran-Lay or who could not identify him or who was unsure of his identity or participation in the crime charged.  *Jackson v. Wainwright,* 390 F.2d 288 (5th Cir. 1968); *Chavis,* 637 F.2d at 223; *Jones v. Jago,* 575 F.2d 1164,1168 (6th Cir.1978); *Hudson v. Blackburn,* 601 F.2d 785 (5th Cir. 1979), *cert. denied,* 444 U.S. 1086 (1980).

18.    Statements Relevant to the Defense.  Mr. Beltran-Lay requests disclosure of any statement that may be "relevant to any possible defense or contention" that she might assert. *United States v. Bailleaux,* 685 F.2d 1105 (9th Cir. 1982).

19.    Jencks Act Material.  Mr. Beltran-Lay requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2  Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Beltran-Lay to investigate the Jencks material. Mr. Beltran-Lay requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20.    *Giglio* Information.  Pursuant to *Giglio v. United States,* 405 U.S. 150 (1972), Mr. Beltran-Lay requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21.    Agreements Between the Government and Witnesses.  Mr. Beltran-Lay requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice

1  concerning any immigration benefits, any contemplated prosecution, or any possible plea

2  bargain, even if no bargain was made or the advice not followed.

3      22.     Informants and Cooperating Witnesses.  Mr. Beltran-Lay requests disclosure of

4  the names and addresses of all informants or cooperating witnesses used or to be used in this

5  case, and in particular, disclosure of any informant who was a percipient witness in this case or

6  otherwise participated in the crime charged against Mr. Beltran-Lay. The government must

7  disclose the informant's identity and location, as well as disclose the existence of any other

8  percipient witness unknown or unknowable to the defense.  *Roviaro v. United States,* 353 U.S.

9  52, 61-62 (1957).  The government must disclose any information derived from informants that

10 exculpates or tends to exculpate Mr. Beltran-Lay.

11     23.     Bias by Informants or Cooperating Witnesses.  Mr. Beltran-Lay requests

12 disclosure of any information indicating bias on the part of any informant or cooperating

13 witness.  *Giglio,* 405 U.S. 150.   Such information would include what, if any, inducements,

14 favors, payments or threats were made to the witness to secure cooperation with the authorities.

15     24.     Personnel Records of Government Officers Involved in the Arrest.  Mr.

16 Beltran-Lay requests all citizen complaints and other related internal affairs documents involving

17 any of the federal, state or local law enforcement officers who were involved in the

18 investigation, search, arrest and interrogation of Mr. Beltran-Lay.  *See Pitchess v. Superior*

19 *Court,* 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of these documents, defense

20 counsel will be unable to procure them from any other source.

21     25.     Opportunity to View the A-file.  Mr. Beltran-Lay hereby requests an

22 opportunity to view, photograph, and copy the A-file in this case.

23     26.     Reports of Scientific Tests or Examinations.  Pursuant to Fed. R. Crim. P.

24 16(a)(1)(F), Mr. Beltran-Lay requests the reports of all tests and examinations conducted upon

25 the evidence in this case, including, but not limited to, any fingerprint testing done upon any

26 evidence seized in this case, that is within the possession, custody, or control of the government,

27 the existence of which is known, or by the exercise of due diligence may become known, to the

28 attorney for the government, and that are material to the preparation of the defense or are

1    intended for use by the government as evidence in chief at the trial.

2        27.  <u>Residual Request</u>.  Mr. Beltran-Lay intends by this discovery motion to invoke his

3    rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure

4    and the Constitution and laws of the United States.  This request specifically includes all

5    subsections of Rule 16.

6        Mr. Beltran-Lay requests that the government provide the above requested material

7    sufficiently in advance of trial and the next motion hearing date.

8

9

10                                   **IV.**

11                              **Conclusion**

12        For the foregoing reasons, these motions should be granted.

13

14    Dated: February 11, 2008                     Respectfully submitted,

15                                                 *s/ Timothy A. Scott*

16                                                 **TIMOTHY A. SCOTT**

17                                                 Attorneys for Mr. Beltran-Lay

18

19

20

21

22

23

24

25

26

27

28