KAREN P. HEWITT
United States Attorney
PAUL L. STARITA
Assistant U.S. Attorney
California State Bar No. 219573
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6507
Email: paul.starita@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07CR3470-BEN |
| Plaintiff, | DATE: April 28, 2008<br>TIME: 2:00 p.m. |
| v. | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' MOTIONS <u>IN LIMINE</u>** |
| JULIO BELTRAN-LAY, | |
| Defendant. | |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Paul L. Starita, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities. This Response and Opposition is based upon the files and records of the case.

//
//
//
//
//
//

# I

## STATEMENT OF THE CASE

On December 27, 2007, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Julio Beltran-Lay ("Defendant") with being a deported alien found in the United States after deportation in violation of 8 U.S.C. § 1326. On January 8, 2008, Defendant was arraigned and entered a not guilty plea.

# II

## STATEMENT OF THE FACTS

### A.   THE INSTANT OFFENSE

On Monday, October 22, 2007, at approximately 5:15 a.m., Sector Radio broadcasted a citizen's report of an individual detained near the R.J. Donovan Correctional Facility. The prison is located approximately one mile east of the Otay Mesa, California, Port of Entry and approximately two miles north of the international border with Mexico. Border Patrol Agent Edgar Hunt responded to the call.

When Agent Hunt arrived, Correctional Officer Sergeant J. Averett had Defendant detained approximately 200 yards east of the guard shack. Sergeant Averett stated that he stopped Defendant because he was trespassing and thought he might be an inmate trying to escape from the facility. After a brief interview, Sergeant Averett determined that Defendant was not an inmate.

Agent Hunt approached Defendant, identified himself as a Border Patrol agent, and asked Defendant routine immigration questions. Defendant claimed that he was a "United States citizen." Defendant could not provide any identification to support his claim. Agent Hunt asked Defendant common knowledge questions regarding the United States. Defendant was unable to provide accurate answers. The answers Defendant provided were confused and contradictory. Defendant was detained and transported to the Chula Vista Border Patrol stations for processing.

At the station, Defendant was entered into the Automated Biometric Identification System. This provided Defendant's true identity and some of his prior criminal and immigration histories. These checks indicated Defendant had been removed to Mexico from the United States, through the San Ysidro, California, Port of Entry, on October 10, 2007. Defendant's criminal history also showed a

conviction for robbery. A complete set of rolled fingerprints was submitted to WIN/AFIS and confirmed Defendant's identity.

At approximately 10:19 a.m., Agent Hunt advised Defendant in the Spanish language of his right to contact the Mexican Consulate as witnessed by Agent Juan Sanchez. Defendant stated that he understood this right and did not wish to speak with the consulate.

Defendant was also advised that his administrative rights did not apply and that he was being charged criminally. Furthermore, he was advised that a voluntary return to Mexico would not be granted.

At approximately 10:21 a.m., Agent Hunt advised Defendant in the Spanish language of his <u>Miranda</u> warnings as witnessed by Agent Sanchez. Defendant stated that he understood his rights and invoked his right to remain silent. At this time, all questioning stopped.

**B.   DEFENDANT'S CRIMINAL AND IMMIGRATION HISTORY**

Defendant was convicted on April 14, 2006, of robbery in violation of California Penal Code § 211 and received 2 years in prison. Accordingly, on September 26, 2007, Defendant was administratively ordered deported to Mexico and, on October 10, 2007, Defendant was physically removed from the United States to Mexico.

**III**

**POINTS AND AUTHORITIES**

**A.   THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL EXCEPT THE GOVERNMENT'S CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. As such, the case agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

//

//

**B.  THE COURT SHOULD PROHIBIT REFERENCE TO WHY DEFENDANT REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so.

Evidence of <u>why</u> Defendant violated 8 U.S.C. § 1326 is irrelevant to the question of <u>whether</u> he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.

Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402.

The case of <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir. 1980) is illustrative. There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. <u>Id.</u> at 491. On appeal, she argued that the district court erred in granting the government's motions <u>in limine</u> to preclude her from introducing her "political, religious, or moral beliefs" at trial. <u>Id.</u> at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. <u>Id.</u> at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," (<u>Id.</u> at 492), and the Ninth Circuit affirmed. Similarly here, the reason why Defendant reentered the United States or his belief that he was entitled to do so, is irrelevant to any fact at issue in this case.

//
//
//
//

1  **C.      THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY**

2      If Defendant seeks to introduce evidence of any former residence in the United States, legal or
3  illegal, the Court should preclude him from doing so.  This evidence, in any form, whether it be
4  a baptismal certificate or school records, is not only prejudicial, but irrelevant and contrary to
5  Congressional intent.  Again, as stated above, evidence "which is not relevant is not admissible." Fed.
6  R. Evid. 402.

7      In <u>United States v. Ibarra</u>, 3 F.3d 1333, 1334 (9th Cir. 1993) <u>overruled on limited and unrelated
8  grounds by</u> <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th Cir. 1996), the district court
9  granted the United States' motion <u>in limine</u> to preclude Ibarra from introducing "evidence of his prior
10 legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326
11 prosecution.  He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to
12 demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly
13 excluded it as irrelevant. <u>Id</u>.

14      Similarly, in <u>United States v. Serna-Vargas</u>, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant
15 filed a motion <u>in limine</u> to introduce evidence of what she termed "de facto" citizenship as an
16 affirmative defense in a Section 1326 prosecution. <u>Id.</u> at 711.  Specifically, she sought to introduce
17 evidence of:  (1) involuntariness of initial residence; (2) continuous residency since childhood; (3)
18 fluency in the English language; and (4) legal residence of immediate family members. <u>Id.</u> at 712.

19      The district court denied the motion, noting that "none of these elements are relevant to the
20 elements that are required for conviction under Section 1326." <u>Id.</u> at 712.  He also noted that admission
21 of the evidence would run "contrary to the intent of Congress." <u>Id</u>.  In particular, he noted that, under
22 Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182(c)), the
23 Attorney General may exercise her discretion not to deport an otherwise deportable alien, if the alien
24 has lived in the United States for 7 years. <u>Id.</u> at 712-13.  The factors which the defendant relied upon
25 to establish her "defendant facto" citizenship, Judge Rafeedie noted, are "among the factors the Attorney
26 General considers in deciding whether to exercise this discretion." <u>Id.</u> at 713.

27      Thus, the district court reasoned, "the factors that [the defendant] now seeks to present to the jury
28 are ones that she could have presented to the jury are ones that she could have presented the first time

she was deported." Id. Therefore, he held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, <u>an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries</u>." Id. (emphasis added).

**D.   THE COURT SHOULD PROHIBIT REFERENCE TO POOR RECORD KEEPING OR DOCUMENT DESTRUCTION**

The United States seeks to exclude Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services', now Department of Homeland Security's record keeping or access to information and records. Specifically, the United States seeks to preclude reference to argument that: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to Defendant. Such argument is irrelevant based upon the facts of this case as there has been no proffer or mention by Defendant that he ever made application to seek reentry after deportation. See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming District Court Judge Lorenz' rulings to deny such testimony in a § 1326 "found in" case with similar facts).

The Ninth Circuit recently held in Rodriguez-Rodriguez that any such testimony or cross examination seeking to elicit such testimony is properly barred as irrelevant. Id. at 1147. The Ninth Circuit explicitly rejected defense counsel's claim that the District Court's exclusion of the anticipated testimony violates the Confrontation Clause. Instead, it declared that "none of the information is relevant on the facts of this case, because it is uncontested that Rodriguez never made any application to the INS or any other federal agency." Thus, absent at a minimum a proffer that the Defendant had in fact applied for or obtained permission to enter or remain in the United States in this instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and properly excludable.

Additionally, the United States seeks to preclude reference to shredding of immigration documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal Case

1  No. SA CR 03-26-AHS (C.D. Cal. 2003) **unless** Defendant testifies or offers evidence that (1) he did
2  in fact apply for permission to reenter the United States from the Attorney General, or his designated
3  successor, the Secretary of the Department of Homeland Security and (2) that such a document would
4  have been stored at that particular facility where the shredding occurred in the Randall case.

5  Any reference of document destruction is irrelevant and unfairly prejudicial unless there is some
6  evidence offered by Defendant at trial that he did in fact seek permission to reenter the United States.
7  See Fed. R. Evid. 401-403. Moreover, even if Defendant offers evidence that he did apply, there must
8  be some showing that his application would have been stored at the facility which is the subject of the
9  Randall case during the time of the alleged shredding of the documents, namely from February to April,
10 2002. Otherwise, it is immaterial and irrelevant whether a contractor of (former) INS destroyed
11 documents at the INS California Service Center in Laguna Niguel, California, because Defendant did
12 not apply, or if he did apply, his application was not stored there, and therefore, could not have been
13 effected.

14 Such testimony as well as any such statements asserted in Defendant's opening statement or
15 closing argument would be unfairly prejudicial to the United States and likely to cause confusion to the
16 jury because such unsupported blanket allegations or references of document destruction or poor record
17 keeping without any showing by Defendant that he applied for permission to reenter would be
18 misleading. Accordingly, the United States seeks an order precluding such argument.

19 **E. THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S AGE, HEALTH, FINANCES, EDUCATION, AND POTENTIAL PUNISHMENT**
20

21 Evidence of, and thus argument referring to, Defendant's health, age, finances, education and
22 potential punishment is inadmissible and improper.

23 Federal Rule of Evidence 402 provides that "Evidence which is not relevant is not admissible."
24 Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is
25 substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions
26 //
27 //
28 //

explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy."  § 3.1 (2003 Edition).[1/]

Any reference to Defendant's health, age, finances, education, potential punishment, or the like is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification.

## F.   THE COURT SHOULD ADMIT EXPERT TESTIMONY

At trial, the United States intends to offer testimony of a fingerprint examiner to identify Defendant as the person who was previously deported.  Such testimony should be admitted to assist the jury in understanding that this Defendant is an alien who was found in the United States after having been deported.  Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States provided written notice to Defendant that it intends to call Mr. David Beers.  This notice, Mr. Beers' statement of qualifications, his report of analysis were provided under separate cover on April 10, 2008.  It is anticipated that Mr. Beers will testify that, based upon his analysis of Defendant's fingerprints, the prints that appear on documents contained in Defendant's A-file belong to Defendant.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed. R. Evid. 702.  Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge.  United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994).  An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact.  Fed. R. Evid. 704.  Here, Mr. Beers' testimony will clearly assist the trier-of-fact in understanding the evidence presented, namely the connection of the various A-File documents to Defendant.

## G.   THE COURT SHOULD PRECLUDE DEFENSE EXPERT TESTIMONY

The United States has made a request from the Defendant for reciprocal discovery.  It is permitted to inspect and copy or photograph any results or reports of physical or mental examinations

---

[1/]   Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict.  United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

1  and of scientific tests or experiments made in connection with the particular case, or copies thereof,
2  within the possession or control of Defendant, which Defendant intends to introduce as evidence in his
3  case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial.
4  Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use under
5  Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to
6  describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses'
7  qualifications. While Defendant may wish to call an expert to testify, Defendant must provide the
8  requisite notice and any reports by said expert witness in a timely fashion in advance of trial.
9  Accordingly, absent such notice and discovery, Defendant should not be permitted to introduce any
10  expert testimony.

11  If the Court determines that Defendant may introduce expert testimony, the United States
12  requests a hearing to determine this expert's qualifications and relevance of the expert's testimony
13  pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999).
14  See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not
15  admit the defendant's proffered expert testimony because there had been no showing that the proposed
16  testimony related to an area that was recognized as a science or that the proposed testimony would assist
17  the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.),
18  cert. denied, 530 U.S. 1268 (2000).

19  **H.    THE COURT SHOULD ADMIT A-FILE DOCUMENTS**

20  1.    A-File Documents are Admissible as Public Records or Business Records

21  The United States intends to offer documents maintained by the former Immigration and
22  Nationalization Service and current Department of Homeland Security regarding Defendant. The
23  agency maintains an "A-file" or "Alien-file" on Defendant, which contains documents reflecting most
24  of Defendant's immigration encounters. The United States moves to introduce "A File" documents to
25  establish Defendant's alienage, prior deportation, and that he was subsequently found in the United
26  States without having sought or obtained authorization from the Attorney General. The documents are
27  //
28  //

1  self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed.
2  R. Evid. 803(6).

3       The Ninth Circuit has addressed the admissibility of A-File documents in <u>United States v. Loyola</u>
4  <u>Dominguez</u>, 125 F.3d 1315 (9th Cir. 1997). There, Loyola Dominguez appealed his § 1326 conviction,
5  arguing, among other issues, that the district court erred in admitting at trial certain records from the
6  illegal immigrant's "A File." <u>Id.</u> at 1317. The district court had admitted: (1) a warrant of deportation;
7  (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of
8  deportation. Loyola Dominguez argued that admission of the documents violated the rule against
9  hearsay and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected
10 his arguments, holding that the documents were properly admitted as public records. <u>Id.</u> at 1318. The
11 court first noted that documents from a defendant's immigration file, although "made by law
12 enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the
13 concerns animating the law enforcement exception to the public records exception." <u>Id.</u> (quoting <u>United</u>
14 <u>States v. Hernandez-Rojas</u>, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such
15 documents are self-authenticating and, therefore, do not require an independent foundation. <u>Id.</u>

16      <u>Loyola-Dominguez</u> is simply among the more recent restatements of the public-records and
17 business-records rules. Courts in this Circuit have consistently held that documents from a defendant's
18 immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage and prior
19 deportation. <u>See</u> <u>United States v. Mateo-Mendez</u>, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court
20 properly admitted certificate of nonexistence as absence of a public record); <u>United States v. Sotelo</u>, 109
21 F.3d 1446, 1449 (9th Cir. 1997) (holding warrant of deportation admissible to prove alienage); <u>United</u>
22 <u>States v. Contreras</u>, 63 F.3d 852, 857 (9th Cir. 1995) (district court properly admitted warrant of
23 deportation as public record); <u>United States v. Hernandez-Rojas</u>, 617 F.2d at 535 (district court properly
24 admitted warrant of deportation as public record).

25       2.      <u>A Certificate of Non-Existence Does Not Violate the Confrontation Clause</u>

26      The United States moves to introduce a Certificate of Non-Existence of Record ("CNR"),
27 prepared by an authorized official at the Department of Homeland Security and certifying that there are
28 no records in any of the Department's databases, files, or archives that Defendant has ever applied for,

or been granted, permission to reenter the United States following his deportation. The Ninth Circuit has held that a CNR is not "testimonial" within the meaning of Crawford v. Washington, 124 S. Ct. 1354 (2004) and therefore that its admission into evidence does not violate the Confrontation Clause of the United States Constitution.   See United States v. Cervantes-Flores, 421 F.3d 825, 831-33 (9th Cir. 2005); Sotelo, 215 F.3d 1039, 1042-43.

## IV

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its Motions In Limine.

DATED: April 14, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/s/ Paul L. Starita*
PAUL L. STARITA
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America
Email: paul.starita@usdoj.gov