**TIMOTHY A. SCOTT**
California Bar No. 215074
LAW OFFICES OF TIMOTHY A. SCOTT
1350 Columbia Street, Suite 600
San Diego CA, 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
email: timscottlaw@cox.net

Attorneys for Julio Beltran-Lay

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE ROGER T. BENITEZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 07cr3470-BEN |
| Plaintiff, ) | |
| ) | Date:  April 28, 2008 |
| ) | Time:  2:00 p.m. |
| v. ) | |
| ) | **MEMORANDUM IN SUPPORT OF** |
| Julio Beltran-Lay ) | **MOTIONS IN LIMINE** |
| ) | |
| Defendant. ) | |

## I.

## Introduction

Mr. Beltran-Lay respectfully brings the following motions in limine. The motions can be grouped into two categories: 1) previously-raised motions to suppress evidence, to which Mr. Beltran-Lay now provides declarations in order to obtain a hearing; and 2) routine motions in limine for jury trial.

As to the motions to suppress, the government represents that presently it does not intend to introduce written or oral statements made by Mr. Beltran. If this representation remains true, the Court will not need to resolve these issues with a hearing. Nevertheless, in the event that the government changes its mind, Mr. Beltran-Lay provides declarations in support of his motions to suppress.[1] He moves for a hearing before admission of any statements against him, and the law

---

[1]  *See* Exhibit A (Declaration of Julio Beltran-Lay in support of motion to suppress Oct. 10 custodial statements); Exhibit B (Declaration of Julio Beltran-Lay in support of motion to suppress written statements taken at border patrol station on date of arrest).

requires these issues to be resolved beforehand – even if the statements are offered in rebuttal only.

Mr. Beltran-Lay also moves to exclude expert witness testimony, to exclude prior convictions and bad acts, and for attorney-conducted voir dire.

## II.
## Statement of Facts

In October of 2007, Mr. Beltran-Lay served the final days of a custodial sentence for a state offense. His release date was October 8, 2007. On October 8, however, he was not released. He was taken to immigration custody instead. Two days later, an immigration officer pulled him out of his cell, and began questioning him without providing any *Miranda* warnings. The officer explained that Mr. Beltran-Lay was in deportation proceedings and had two choices: either agree that he was deportable and be removed that very day; or fight his deportation, in which case he would remain in custody for perhaps years. Mr. Beltran-Lay felt he had no choice and involuntarily agreed to administrative deportation.[2] The government did in fact remove him that same day, as promised.

After his deportation, on October 22, 2007, Mr. Beltran-Lay was walking on a road near Otay Mesa, California. He was lost and began walking toward the nearest lights he could see – lights that unfortunately for him, turned out to be Donovan State Prison. However, Mr. Beltran continued walking on the road in full view; he did not attempt to hide or elude law enforcement in any way. An officer approached him in a pickup truck and asked if he could help him. Mr. Beltran-Lay stated that he was lost. The officer accused him of being an illegal alien. Mr. Beltran-Lay denied being an alien. The officer nevertheless handcuffed him immediately and called border patrol. Border patrol responded, and began questioning Mr. Beltran-Lay while he was in custody. Mr. Beltran-Lay again explained that he was a United States citizen. He correctly answered all of the questions that the agent asked him. The agent did not ask him "United States citizen questions" to which Mr. Beltran-Lay did not know the answer. The agent

---

[2] *See* Exhibit A.

arrested him anyway, however, and transported him back to the border patrol station.[3]

At the station, agents read Beltran-Lay his *Miranda* rights. He invoked. Nevertheless, *after* he invoked, officers approached him and persuaded him to sign a request for voluntary removal to Mexico. Mr. Beltran-Lay avers that this statement was also involuntary, and it was certainly taken in violation of his *Miranda* rights.[4]

Again, Mr. Beltran-Lay requests a statements hearing before any alleged admissions are introduced against him.

## III.

## Discussion

**A. Because Mr. Beltran's previous statements were given involuntarily and outside of *Miranda*, they are inadmissible.**

Mr. Beltran moves to suppress two separate statements in the event that the government decides to use them: 1) a statement made in immigration custody on October 10, 2007 (where Mr. Beltran purportedly waives his rights and agrees that he is deportable); and 2) a statement requesting voluntary return taken on the day of his arrest.

*1. Because Mr. Beltran's statements in immigration custody were taken without benefit of Miranda and upon threat of extended incarceration, they are inadmissible in this criminal proceeding.*

Mr. Beltran-Lay moves to exclude admissions extracted from him prior to his deportation. The law makes no distinction between statements that are direct confessions and statements that amount to "admissions" of all or part of an offense. Both are protected by *Miranda*.[5] Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken

---

[3] *See* Exhibit C (Declaration of Julio Beltran-Lay in support of motion to suppress fruit of illegal arrest).

[4] *See* Exhibit B.

[5] *See United States v. Brown*, 720 F.2d 1059, 1066 n.7 (9th Cir. 1983) ("The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination" (quoting Miranda, 384 U.S. at 476-77)).

into custody or otherwise deprived of his freedom of action in any significant way.[6]  For purposes of Miranda, interrogation exists when an agent asks questions she "should know are reasonably likely to elicit an incriminating response."[7]  There is no distinction between civil and criminal interrogation.[8]  Only when an INS agent has no reason to believe that her questions are likely to elicit an incriminating response are *Miranda* warnings not required.[9]

Two Ninth Circuit cases make clear that Mr. Beltran-Lay's custodial immigration statements are inadmissible in this criminal case: *United States v. Mata-Abundiz*,[10] and *United States v. Chen*.[11]  The Central District of California's decision in *United States v. Lopez-Chamu* is also instructive.[12]

In *Mata-Abundiz*, an INS agent visited the defendant in county jail "to obtain biographical information about [his] immigration status."[13]  The INS agent gave no *Miranda* warnings before asking the defendant about his citizenship.  The defendant "responded that he was a citizen of Mexico."[14]  Several days later, the government filed federal charges for possession of a firearm by an illegal alien.  At trial, the prosecutor used the defendant's un-Mirandized statement regarding alienage to convict the defendant.  The Ninth Circuit reversed the district court, concluding that the INS agent's "failure to give [the defendant] the Miranda warnings makes the

---

[6]  *Miranda*, 384 U.S. at 444; *Orozco v. Texas*, 394 U.S. 324, 327 (1969).

[7]  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

[8]  *See Mata-Abundiz*, 717 F.2d 1277, 1279 (9th Cir. 1983) (recognizing the United States Supreme Court's "decisive" rejection to draw distinctions between civil and criminal interrogations in *Mathis v. United States*, 391 U.S. 1 (1968)).

[9]  *Mata-Abundiz*, 717 F.2d at 1279.

[10]  717 F.2d 1277 (9th Cir. 1983).

[11]  439 F.3d 1037 (9th Cir. 2006).

[12]  373 F.Supp.2d 1014, 1021(C.D. Cal. 2005).

[13]  *Mata-Abundiz*, 717 F.2d at 1278.

[14]  *Id.*

answers inadmissible in a subsequent criminal prosecution."[15]  In so doing, the Ninth Circuit rejected the trial court's analysis that "the initial civil questioning was not a subterfuge to avoid the need to give Miranda warnings," noting: "[i]f civil investigations by the INS were excluded from the Miranda rule, INS agents could evade that rule by labeling all investigations as civil. Civil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by Miranda warnings."[16]  The Ninth Circuit clarified that, "[t]he test is objective."[17]  The operative question is whether "the questioning . . . was reasonably likely to elicit an incriminating response."[18]  In *Mata-Abundiz*, the agent should have known that admissions regarding alienage could be used against the defendant in a criminal prosecution for possession of a firearm by an illegal alien.  In this case, the ICE officer should have known that admissions regarding alienage could be used against Mr. Beltran-Lay in a section 1325 or section 1326 prosecution.  In *Mata-Abundiz*, as in this case, the questions "asked related directly to an element of a crime that [the INS agent] had reason to suspect."[19]  Thus, Miranda warnings were required.

In *Chen*, the defendant was taken into administrative custody after he was discovered at an apartment connected to suspected alien smuggling.[20]  A few days later, the defendant was served with a notice informing him that he had been arrested because he was believed to be an illegal alien.  While the defendant was in custody, an INS agent questioned the defendant regarding how he arrived in Guam without giving the defendant Miranda warnings.[21]  The INS

---

[15]   *Id.* at 1278.

[16]   *Id.* at 1279.

[17]   *Id.* at 1280.

[18]   *Id.*

[19]   *Id.* at 1280.

[20]   *Chen*, 439 F.3d at 1038.

[21]   *Id.* at 1038-39.

agent forwarded his investigation file to the prosecutor.[22]  The prosecutor then charged the defendant with perjury, and attempted to use the defendant's allegedly false statements to the INS agent as evidence against him.[23]  The Ninth Circuit affirmed the district court's suppression of the statements under Miranda, holding that the factual circumstances of the case, including the prosecutor's willingness to pursue charges against the defendant "and the fact that [the defendant] was questioned in a district that has a practice of prosecuting § 1325 violations—rendered [the agent's] questioning of [the defendant] an 'interrogation' for Miranda purposes."[24]

In so holding, the Ninth Circuit distinguished its decision in *United States v. Salgado*[25] that held that an INS agent's purely administrative interview of a defendant in state custody for the sole purpose of determining whether an immigration detainer should be lodged was not an interrogation for Miranda purposes.[26]  In *Chen*, unlike in *Salgado*, the questioning occurred in a district where the United States Attorney had a "practice of prosecuting § 1325 violations."[27]  Thus, the agent's "questioning about [the defendant's] alienage was reasonably likely to elicit a response that would incriminate [the defendant] in a § 1325 prosecution."[28]  Like the defendant in *Chen*, Mr. Beltran-Lay was questioned in a district – the Central District of California – where illegal entry prosecutions are common.  Furthermore, while the defendants in *Chen* and *Salgado* were questioned while in state custody, Mr. Balderas was questioned while in federal custody, making a federal prosecution for an immigration violation even more likely.  Thus, in this case, as in *Chen*, *Miranda* warnings were required.

---

[22]    *Id*. at 1039.

[23]    *Id*.

[24]    *Id*. at 1042.

[25]    293 F.3d 1169 (9th Cir. 2002).

[26]    *Id*. at 1038-42.

[27]    *Id*. at 1042.

[28]    *Id*.

1    Finally, in *Lopez-Chamu*,[29] immigration agents twice interviewed the defendant while he was in state custody, including asking the defendant questions regarding his citizenship.[30] No *Miranda* warnings were given.[31] The defendant admitted to the agents that he was a citizen of Mexico and that he did not possess "the proper documentation needed to be in the United States."[32] In a subsequent §1326 prosecution, the court suppressed the admissions of alienage under *Miranda*, holding that the agents knew or should have known that their questions were likely to elicit incriminating responses.[33] Precisely the same analysis applies here. Miranda warnings were required.[34] Unless the prosecutor can demonstrate compliance with Miranda in this case, the alleged statement during immigration proceedings must be suppressed.

**B.    Border Patrol did not have probable cause to arrest Mr. Beltran-Lay in Otay Mesa, thus the Court should suppress all fruit of Mr. Beltran-Lay's illegal arrest.**

Mr. Beltran-Lay previously moved to suppress fruit of his unlawful arrest in the Otay Mesa area of San Diego. He has submitted a declaration demonstrating that he was walking on a road in Otay Mesa, California (not in the hills or bushes), that he explained that he was a United States citizen, and that the agent's report is inaccurate in that it claims that the agent asked Mr. Beltran-Lay "U.S. citizen questions" that he somehow did not know how to answer. In submitting this declaration, Mr. Beltran-Lay has placed numerous facts at issue, meriting a hearing.

This hearing remains necessary unless the government stipulates that it will not use his

---

[29]   373 F.Supp.2d 1014.

[30]   *Id.* at 1016-17

[31]   *Id.*

[32]   *Id.* at 1016.

[33]   *Id.* at 1020.

[34]   *See also United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993) (holding that there was a Miranda violation where an immigration agent asked the defendant a question "for the direct and admitted purpose of linking [the defendant] to his incriminating immigration file").

subsequent custodial statements even in rebuttal, because evidence suppressed under the Fourth Amendment may not be used even for that purpose. For these reasons, Mr. Beltran-Lay renews his motion to suppress evidence from his unlawful arrest, and requests an evidentiary hearing.

**C.    All expert witnesses offered without appropriate notice violate Fed. R. Crim. P. 16 and should be excluded.**

Federal Rule of Criminal Procedure 16(a)(1)(G) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this notice is ongoing, continuing prior to and during trial.[35] When a party fails to comply with the discovery rules set forth in Rule 16, exclusion can be a proper remedy.[36]

The government provided an expert witness notice letter on April 10, 2008.[37] The letter asserted that the government would offer 1) a fingerprint expert to tie Mr. Beltran-Lay to the A-file; and 2) an A-file custodian asserting that there was no record of Mr. Beltran-Lay applying for or receiving permission to enter the U.S. after his deportation.[38] Mr. Beltran-Lay has no quarrel with the testimony outlined in the letter, provided that the government's proof adheres to the proffer. The Court should not allow, however, additional experts or additional testimony beyond what has been described in the government's notice. Mr. Beltran-Lay respectfully requests that this Court grant a motion in limine excluding any experts and/or testimony not already disclosed to the defense.

---

[35]    *See* Fed. R. Crim. P. 16(c).

[36]    Fed. R. Crim. P. 16(d)(2).

[37]    *See* Exhibit D.

[38]    *Id.*

1  **D.    This court should exclude any Fed. R. Evid. 404(b) evidence for lack of notice, and exclude any Fed. R. Evid. 609 or 608 evidence absent a showing of admissibility under the rules and Ninth Circuit case law.**

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any "other crimes, wrongs, or acts" it plans to introduce into evidence.[39] Under Fed. R. Evid. 609, evidence of prior convictions is usually admissible only under limited circumstances as well.[40] In arguing to admit 404(b) evidence, "the government 'must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.'"[41]

The government has provided no notice under Fed. R. Evid. 404(b). The government has given no indication that it plans to introduce Fed. R. Evid. 608 or 609 evidence either, and it should not be permitted to do so without a hearing first. Mr. Beltran-Lay moves to exclude evidence under Fed. R. Evid. 404(b), 608 and 609.

**E.    In the interest of time, the court should permit attorney-conducted voir dire.**

Fed. R. Crim. P. 24(a) provides in pertinent part that "[t]he court may examine prospective jurors or may permit the attorneys for the parties to do so." "If the court examines the jurors," however, "it must permit the attorneys for the parties to: (A) ask further questions that the court considers proper; or (B) submit further questions that the court may ask if it considers them proper."[42]

Mr. Beltran-Lay asks either for ten minutes to conduct attorney-conducted voir dire, or for the follow-up that the law requires. Simply allowing the attorney voir dire will ultimately be quicker, however. If the Court prefers to conduct voir dire itself, then Rule 24 allows Mr. Beltran-Lay either to conduct follow-up questioning as appropriate, or to submit his own follow-up questions for the Court to ask. Either of these two follow-up devices will take more time than attorney-conducted voir dire would

---

[39]   *United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999).

[40]   *See generally, United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (en banc), cert. denied 444 U.S. 1034 (1980) (setting forth five-pronged test for admissibility under Fed. R. Evid. 609).

[41]   *United States v. Mayans*, 17 F.3d 1174, 1181-1182 (9th Cir. 1994) (*quoting United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.1982)).

[42]   *Id.*

have in the first place. Both would require more motions and rulings. To expedite these proceedings and to protect Mr. Beltran-Lay's right to an impartial jury, he requests ten minutes of attorney-conducted voir dire.

## IV.
## Conclusion

For the foregoing reasons, these motions should be granted.

Dated: April 14, 2008                                        Respectfully submitted,

*s/ Timothy A. Scott*

**TIMOTHY A. SCOTT**

Attorneys for Mr. Beltran-Lay