**TIMOTHY A. SCOTT**
California Bar No. 215074
LAW OFFICES OF TIMOTHY A. SCOTT
1350 Columbia Street, Suite 600
San Diego CA, 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
email: timscottlaw@cox.net

Attorneys for Julio Beltran-Lay

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ROGER T. BENITEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 07cr3470-BEN |
| Plaintiff, ) | |
| ) | Date: April 28, 2008 |
| v. ) | Time: 2:00 p.m. |
| ) | **MEMORANDUM IN SUPPORT OF** |
| Julio Beltran-Lay ) | **MOTIONS TO PRE-ADMIT DOCUMENTS** |
| ) | **BEARING ON ALIENAGE.** |
| Defendant. ) | |

## I.

## Introduction

Mr. Beltran-Lay moves to pre-admit three pieces of evidence at trial: 1) a baptism certificate that lists Mr. Beltran-Lay's birthplace as Los Angeles, California;[1] 2) regularly-kept school records, again listing Los Angeles as his place of birth;[2] and 3) a certificate of no record from Tijuana, Baja California, showing no record of his birth in Baja, California.[3] All three of these documents directly address Mr. Beltran-Lay's citizenship — an element of the offense that the government must prove beyond a reasonable doubt. All three are admissible and self-authenticating under well-established exceptions to the hearsay rules and Ninth Circuit case law. To expedite matters at trial, he asks the Court to rule that the documents are admissible at trial.

---

[1]    *See* Exhibit A.

[2]    *See* Exhibit B.

[3]    *See* Exhibit C.

## II.

## Statement of Facts

The government has charged Mr. Beltran-Lay with being a deported alien found in the United States. As such, it must prove that he is not a United States citizen beyond a reasonable doubt. To combat this element of the offense, Mr. Beltran-Lay intends to show that he may well have been born on U.S. soil. He proposes to pre-admit three pieces of evidence to do so.

First, Mr. Beltran-Lay has a baptism certificate listing his birthplace as Los Angeles, California. The Catholic parish listed on the baptism record has provided a certificate of custodian of records, authenticating the certificate and establishing that it was regularly-created and kept record of the Catholic Church.[4]

Second, Mr. Beltran-Lay has school records also showing his birthplace as Los Angeles, California. The custodian of records for the school has provided a certificate establishing that the school records are authentic and meet the business-records requirements of Fed. R. Evid. 803(6).[5]

Third, Mr. Beltran-Lay has obtained a certificate of no record from Tijuana, Baja California, showing that there is no record of his birth there. The document is a public record under Fed. R. Evid. 803(8), and Mr. Beltran-Lay has obtained an apostille from the appropriate public official in Mexico to authenticate the foreign public record under Fed. R. Evid. 902(3).[6]

All of the records have already been disclosed to the government in reciprocal discovery. He moves all three documents into evidence, as each has now been self-authenticated under Fed. R. Evid. 902.

//
//
//

---

[4]   See Exhibit A.

[5]   *See* Exhibit B.

[6]   *See* Exhibit C.

# III.

# Discussion

**A.    Mr. Beltran's baptism certificate is an admissible religious record under Fed. R. Evid. 803(11).**

Fed. R. Evid. 803(11) creates a hearsay exception for records created and maintained by religious organizations.  Rule 803(11) provides a hearsay exception for "*Statements of births, marriages, divorces, deaths, legitimacy, ancestry, relationship by blood or marriage, or other similar facts of personal or family history*, contained in a regularly kept record of a religious organization."[7]  Under the Rule itself, then, statements of birth history contained in a religious record are admissible.

Commentary to 803(11) is in accord.  The Advisory Committee Notes to the Rule provide that "Records of activities of religious organizations are currently recognized as admissible at least to the extent of the business records exception to the hearsay rule."[8]  "In view of the unlikelihood that false information would be furnished on occasions of this kind," the Notes explain, "the rule contains no requirement that the informant be in the course of the activity."[9]  As the author explains in *Weissenberger's Federal Evidence*[10], "Rule 803(11). . . does not require firsthand knowledge of the person preparing the entry.  Consequently, information on the enumerated subjects, i.e., statements of births, marriages, divorces, deaths, and the like, are admissible if they meet the criteria of the Rule, without any inquiry into the source of the information."[11]  "The only criteria that must be established relate to proof that the statements are contained in the records of a religious organization and that such records are those that are

---

[7]    Fed. R. Evid. 803(11) (emphasis provided).

[8]    Fed. R. Evid. 803(11), Advisory Committee Notes to 1972 Proposed Rule.

[9]    *Id.*

[10]    Weissenberger's Federal Evidence (2007), §803.53.

[11]    *Id.*

1  regularly kept by that organization."[12]

2  Case law interpreting the rule confirms this commentary. In *United States v. Bahena-Cardenas*,[13] a §1326 case from this district, the government introduced a baptism certificate showing that the accused was born in Mexico. The jury convicted, and Mr. Bahena-Cardenas appealed. On appeal, the Ninth Circuit held that sufficient evidence of alienage was presented at trial, and that the jury reasonably relied in part upon the baptism certificate to prove that Mr. Bahena was born in Mexico.[14] It affirmed the conviction accordingly.[15]

United States Immigration law itself also recognizes the evidentiary value of baptism records to show place of birth. Through 22 C.F.R. 51.43, INS itself provided that in applying for a U.S. passport, "[t]he passport issuing office will consider, as secondary evidence [of citizenship], *baptismal certificates*, certificates of circumcision, or other documentary evidence created shortly after birth but not more than 5 years after birth."[16]

Thus, religious records – baptism records included – are admissible to prove facts of birth and family history. If the government was permitted to use a baptism certificate to show alienage in *Bahena-Cardenas*, and the INS relies upon them in issuing passports, then certainly Mr. Beltran-Lay should be afforded the same rights in his own defense. For all of these reasons, Mr. Beltran-Lay's motion to pre-admit these documents should be granted.

//

---

[12]  *Id.*

[13]  411 F.3d 1067 (9th Cir. 2005).

[14]  *Id.* at 1076.

[15]  *Id.*

[16]  Since Mr. Beltran's birth, this CFR has been recodified as 22 CFR 51.42 and altered slightly. It now reads in pertinent part: "Secondary evidence includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth." Both versions of the CFR ask applicants to provide birth certificates as "primary evidence" if they are able, while providing for "secondary" evidence like baptism certificates if necessary.

**B.     Mr. Beltran's public school records are admissible under Fed. R. Evid. 803(6)**

Fed. R. Evid. 803(6) creates a hearsay exception for records of regularly conducted business activity. Under Fed. R. Evid. 803(6), "[T]he term 'business . . . includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."[17]

The 1974 Advisory Committee Notes to Fed. R. Evid. 803(6) clearly state that school records are admissible as business records: "schools, churches, and hospitals are groups . . . . which keep financial and other records on a regular basis in a manner similar to business enterprises" the Advisory Committee explains.[18] "We believe these records are of equivalent trustworthiness and should be admitted into evidence."[19]

In *United States v. Basey*,[20] for example, the government introduced school records against a defendant to help prove an address relevant to the alleged conspiracy. The Ninth Circuit affirmed on appeal, holding that there was "[n]o error in the admission of Basey's college records to establish her address. A sufficient custodian testified that the records were made and kept in the regular course of college business."[21] The court went further in stating, "It is unimportant under Fed. R. Evid. 803(6) that the custodian did not herself record the information or know who recorded the information."[22]

Similarly, in *United States v. Catabran*,[23] computer printouts of school records was introduced against the defendant which, in part, contributed to the body of evidence used by the government to attain a conviction. On appeal, the Ninth Circuit ruled that the computer

---

[17]   Fed. R. Evid. 803(6).

[18]   *Id.*

[19]   *Id.*

[20]   613 F.2d 198, 201 n.1 (9th Cir. 1979), *cert. denied* 446 U.S. 919.

[21]   *Id.*

[22]   *Id.*

[23]   836 F.2d 453, 458 (9th Cir. 1988).

1  printouts were properly admitted under the business records exception to Fed. R. Evid. 803(6).[24]
2       Here, Mr. Beltran-Lay seeks to introduce school records showing that he was born in Los
3  Angeles. The records are relevant and admissible under *Basey* and *Catabran*. A custodian of
4  records has authenticated the records under Fed. R. Evid. 902, laying their foundation under Fed.
5  R. Evid. 803(6) at the same time. These are self-authenticating business records, and should be
6  admitted at trial.

**C.   The certificate of no record in Baja California is an admissible public foreign record.**

Fed. R. Evid. 803(10) allows for the admission of documents or testimony showing the non-existence of a particular public record. Under Fed. R. Evid. 902, a foreign document is self-authenticating if attested by an appropriate foreign official, and accompanied by a final certification of genuineness.[25]

Mr. Beltran-Lay has obtained a certificate revealing that no record of his birth exists in Tijuana. The appropriate Mexican official has issued an apostille, certifying the document. Further testimony can be developed by the defense team as to the source of the document if the Court or government desires, but it is unnecessary for admissibility. The document is an authenticated foreign certificate of no record, and is thus admissible.

//
//
//
//
//
//
//

---

[24]   *Id.*

[25]   See Fed. R. Evid. 902(3).

# IV.
# Conclusion

For the foregoing reasons, these motions should be granted.

Dated: April 14, 2008                               Respectfully submitted,

*s/ Timothy A. Scott*

**TIMOTHY A. SCOTT**

Attorneys for Mr. Beltran-Lay